FILED

05/16/2024

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 2, 2024 Session

## KING CONSTRUCTION GROUP, INC. v. HIGHLANDS RESIDENTIAL SERVICES

**Appeal from the Chancery Court for Putnam County**
**No. 2022-113     Ronald Thurman, Chancellor**

_____

### No. M2023-00928-COA-R3-CV

_____

This appeal concerns the Tennessee Prompt Pay Act, Tenn. Code Ann. § 66-34-101, *et seq.* ("the PPA"). King Construction Group, Inc. ("King") sued Highlands Residential Services ("HRS") in the Chancery Court for Putnam County ("the Trial Court") for violating the PPA. The parties filed competing motions for summary judgment. The Trial Court ruled in King's favor, granting an award to King for HRS's failure to place retained funds in a separate, interest-bearing escrow account as required by the PPA. The Trial Court further awarded King statutory interest and attorney's fees. HRS appeals, arguing that an amendment to the PPA, which became effective in July 2020 after the parties had entered into their agreement, means that HRS, a public housing agency, did not have to place retainage in an escrow account. We hold that, as HRS first failed to place retained funds in an escrow account before the amendment became effective, the pre-July 2020 version of the PPA applies to this action. We affirm the Trial Court's award of a penalty to King for HRS's failure to place retainage in an escrow account. However, we reverse the Trial Court's award of attorney's fees to King because the Trial Court made no supporting findings nor is there any evidence of bad faith by HRS. In addition, we vacate the Trial Court in its award of statutory interest to King and remand for the Trial Court to calculate a new award of statutory interest to King at the interest rate specified in the pre-July 2020 version of the PPA. We thus affirm, in part, reverse, in part, and vacate, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in Part, Reversed, in Part, and Vacated, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

H. Rowan Leathers III and W. Travis Vest, Nashville, Tennessee, for the appellant, Highlands Residential Services.

Vic L. McConnell and Blake E. Creekmur, Nashville, Tennessee, for the appellee, King Construction Group, Inc.

## OPINION

### Background

In January 2020, King entered into a contract with HRS, a public housing agency, under which King would provide labor and materials for a HRS project in Cookeville. Under the PPA as it then read, HRS was obliged to deposit all withheld retainage of payments due to King into a separate, interest-bearing escrow account, or else pay a penalty for each day the funds were not deposited in an escrow account. *See* Tenn. Code Ann. § 66-34-104(a), (c). HRS failed to do so. In July 2020, after the parties entered their agreement, the PPA was amended to, among other things, exempt governmental entities from having to deposit retainage in an escrow account. HRS has contended throughout this case that the July 2020 amendment applies even though it first withheld retainage before the amendment's effective date.

In July 2022, King sued HRS in the Trial Court for failing to pay penalties due to King under the PPA stemming from HRS's failure to deposit retainage in an escrow account. HRS filed an answer in opposition. In December 2022, King filed a motion for summary judgment. In March 2023, HRS filed its motion for summary judgment. In April 2023, the Trial Court heard the parties' competing motions for summary judgment. In May 2023, the Trial Court entered an order granting and denying both motions in part, stating as relevant:

> 1. With regard to Prompt Pay Act claims, King performed construction work for HRS pursuant to a written lump sum contract executed on or about January 28, 2020 between King and HRS in the amount of $8,780,000 ("Contract"). The Contract was amended by nine (9) change orders executed after July 1, 2020.
> 2. HRS made periodic payments to King for work completed pursuant to the Contract.
> 3. HRS first withheld 5% retainage from the periodic payments it made to King beginning on June 4, 2020 (the "Retainage").
> 4. HRS did not deposit said withheld Retainage into a separate, interest bearing, escrow account with a third party as required by T.C.A. § 66-34-104(a).

-2-

5. HRS's failure to deposit withheld Retainage into a separate interest bearing escrow account is a violation of T.C.A. § 66-34-104 resulting in HRS being required to pay $300 per day for each and every day that the Retainage was not deposited into a proper escrow account. T.C.A. § 66-34-104(c).

6. HRS paid King the withheld retainage on May 28, 2022 and this lawsuit was filed on July 8, 2022 to recover the statutory penalty under T.C.A. § 66-34-104(c).

7. King has [met] all prerequisites under the Tennessee Prompt Payment Act to seek and recover the relief provided for by T.C.A. § 66-34-101, *et. seq*.

8. Although HRS is a "department, board or agency of the City of Cookeville" exempting it from the current version of T.C.A. § 66-34-104(c)(effective July 1, 2020), it was not exempt from T.C.A. § 66-34-104(c) at the time the first retainage payment was withheld.

9. Because HRS was not exempted from T.C.A. § 66-34-104(c) at the time it first withheld retainage, it is liable for damages in the amount of $78,900 due to retainage being withheld on June 4, 2020 until it was released on March 28, 2022.

10. Such penalty amount is calculated in light of *Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, 625 S.W.3d 830 (2021) to include damages for 263 days which are the number of days the June 4, 2020 retainage was withheld before release on March 28, 2022 for the time period 365 days before the complaint was filed on July 8, 2022 (July 8, 2021 to March 28, 2022 or 263 days).

11. According to the Prompt Pay Act, a claimant may recover interest and attorney's fees for payments withheld in bad faith. The Court reserves ruling on the issue of interest and attorney fees pending a motion for such to be filed by Plaintiff at a later date.

Accordingly, HRS's Motion for Summary Judgment and King's Motion for Summary Judgment are GRANTED in part and denied in part. Accordingly, it is ORDERED, ADJUDGED and DECREED that King shall have a judgment against HRS in the amount of $78,900 for violation of the Prompt Pay Act.

HRS appealed to this Court. However, there was no final judgment because the issues of statutory interest and attorney's fees remained outstanding. We entered an order instructing the parties to obtain a final judgment. In September 2023, the Trial Court entered an order addressing the outstanding issues, stating in part:

1. A judgment was entered by the Court in favor of King and against HRS on May 24, 2023 in the amount of $78,900 for HRS' violation of the

PPA based on its failure to deposit withheld retainage into a separate interest bearing escrow account. HRS failed to timely pay the statutory damages accruing under the PPA to King. Tenn. Code Ann. § 66-34-601 provides for an award of statutory interest at the rate of one and one-half percent (1.5%) per month for the failure to make any payments required under the Act. Accordingly, King shall be awarded interest in the amount of $19,257.36 pursuant to the PPA.

2. Tenn. Code Ann. § 66-34-602(d) provides that reasonable attorneys' fees may be awarded against the non-prevailing party in an action under the PPA if the non-prevailing party acted in bad faith. The Court determines that King is entitled to an award of attorneys' fees based on HRS' bad faith refusal to timely pay damages under the PPA. Accordingly, King shall be awarded $13,121.49 for attorney's fees and expenses.

3. Court costs are taxed to HRS.

4. All claims having been fully resolved, the Clerk is directed to enter this Final Order of Judgment as a Final Judgment under Rule 58 of the Tennessee Rules of Civil Procedure.

This appeal is now properly before us.

## Discussion

Although not stated exactly as such, HRS raises the following issues on appeal: 1) whether the Trial Court erred in granting an award to King for HRS's failure to deposit retainage in an escrow account; 2) whether the Trial Court erred in awarding King attorney's fees; and 3) whether the Trial Court erred in awarding King statutory interest.

This matter was resolved by summary judgment. Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare– Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d

-4-

193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015). In addition, "[w]hether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

Certain of the issues on appeal implicate statutory construction. Regarding statutory construction, the Tennessee Supreme Court has stated:

> The first rule of statutory construction is to effectuate legislative intent. *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017). We look at "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). We seek a reasonable interpretation "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Beard*, 528 S.W.3d at 496 (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). The statute's text "is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

*Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, 625 S.W.3d 830, 838 (Tenn. 2021).

In addition, one issue on appeal is reviewed under the abuse of discretion standard. In *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White*

*v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

We first address whether the Trial Court erred in granting an award to King for HRS's failure to deposit retainage in an escrow account. This issue hinges on which version of the PPA applies to this action. The PPA was amended effective July 1, 2020 in the midst of the underlying transactions. Among other changes, under Tenn. Code Ann. § 66-34-104 as amended in 2020, the $300 per day amount assessed for failure to deposit retainage in an escrow account constitutes damages rather than a penalty as was the case before. *See* Tenn. Code Ann. § 66-34-104(c) (West eff. July 1, 2020)[1]. In addition, under the PPA as amended, local governmental entities and their departments, boards or agencies are exempted from damages for failure to deposit retainage in a separate, interest-bearing escrow account. *See* Tenn. Code Ann. § 66-34-104(g) (West eff. July 1, 2020) ("Subsections (c), (d), and (j) do not apply to the state and any department, board, or agency thereof, including the University of Tennessee; counties and municipalities, and all departments, boards, or agencies thereof, including all school and education boards; and any other subdivision of the state.") The relevant amendments to the PPA became effective on July 1, 2020. *See* 2020 Tennessee Laws Pub. Ch. 749 (S.B. 2681) ("This act shall take effect July 1, 2020, the public welfare requiring it, and applies to actions occurring and contracts entered into, amended, or renewed on or after that date.").

HRS argues that "actions occurring" means "payments made and retainage withheld pursuant to agreements, such as the Contract." According to HRS, it should not apply to "payments made or retainage withheld on or after July 1, 2021 [sic] concerning contracts in existence prior to such date." HRS argues further that the parties' agreement was amended some nine times through change orders and these change orders mean that the amended version of the PPA applies. For its part, King says that the issue is simple—the previous version of the PPA was in effect when HRS first failed to deposit retainage in an

---

[1] Tenn. Code Ann. § 66-34-104(c) (West eff. July 1, 2020) provides:

> If the party withholding the retained funds fails to deposit the funds into an escrow account as provided in this section, then the party shall pay the owner of the retained funds an additional three hundred dollars ($300) per day as damages, not as a penalty, for each and every day that the retained funds are not deposited into an escrow account. Damages accrue from the date retained funds were first withheld and continue to accrue until placed into a separate, interest-bearing escrow account or otherwise paid.

Tenn. Code Ann. § 66-34-104(c) previously read:

> In the event that the party withholding the retained funds fails to deposit the funds into an escrow account as provided herein, such party shall be responsible for paying the owner of the retained funds an additional three hundred dollar ($300) penalty per day for each and every day that such retained funds are not deposited into such escrow account.

Tenn. Code Ann. § 66-34-104(c) (West July 10, 2015 to June 30, 2020).

escrow account and so the previous version of the law applies. King contends that the change orders are of no consequence.

Regarding when statutes operate retroactively, the Tennessee Supreme Court has discussed as follows:

> Generally statutes are presumed to operate prospectively and not retroactively. *Woods v. TRW, Inc.*, 557 S.W.2d 274, 275 (Tenn. 1977); *Cates v. T.I.M.E., DC, Inc.*, 513 S.W.2d 508, 510 (Tenn. 1974). An exception exists, however, for statutes which are remedial or procedural in nature. Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result. *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976). The exception is also limited by the principle that retrospective application of a remedial or procedural statute is constitutionally forbidden if it takes away a vested right or impairs contractual obligations. *Id.*; *see also Mid-South Milling Co., Inc. v. Loret Farms*, *Inc.*, 521 S.W.2d 586 (Tenn. 1975).

*Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993). The Tennessee Supreme Court has characterized the PPA as "a remedial statute, designed to help protected individuals and entities timely recover the full amount of funds they have already earned." *Snake Steel*, 625 S.W.3d at 835.

While the PPA is a remedial statute, it is clearly remedial with respect to contractors being paid in a timely fashion. It is not remedial towards those who retain funds owed to contractors. When the parties entered into their agreement and when HRS first failed to deposit retainage in an escrow account, the PPA provided for a statutory penalty for failure to deposit retainage in an escrow account. King had a reasonable expectation that it would be entitled to receive a penalty from HRS if the latter failed to deposit retainage in an escrow account. This right to a penalty in the event of non-compliance by HRS was a substantive right. As it happened, HRS failed to establish a separate, interest-bearing escrow account, or to deposit retainage into such account. HRS first withheld retainage from King on June 4, 2020. At that time, the previous version of the PPA was in effect. HRS's original act of withholding retainage from King without placing the funds in an escrow account was the relevant action for purposes of determining whether the PPA as amended should apply. Therefore, the subsequent change orders are immaterial. King's rights already had accrued by the time of the PPA's amendment in July 2020. We hold that the pre-July 2020 version of the PPA applies to this action, and the Trial Court

committed no reversible error in assessing a penalty against HRS. We affirm the Trial Court on this issue.

We next address whether the Trial Court erred in awarding King attorney's fees. Regarding attorney's fees, the relevant, pre-July 2020 version of the PPA provided: "Reasonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith." Tenn. Code Ann. § 66-34-602(b) (West July 10, 2015 to June 30, 2020).[2] We review a trial court's decision to award attorney's fees under the PPA for abuse of discretion. *Vic Davis Constr., Inc. v. Lauren Eng'rs & Constructors, Inc.*, No. E2017-00844-COA-R3-CV, 2019 WL 1300935, at *11 (Tenn. Ct. App. March 20, 2019), *perm. app. denied Aug. 14, 2019* (applying the abuse of discretion standard to an issue of attorney's fees under the PPA). Bad faith in this context means a party acts with "knowing or reckless disregard for contractual rights or duties." *Id*. Whether a party has acted in bad faith is a factual determination. *Id*.

HRS argues that Tenn. Code Ann. § 66-34-602 "is limited to those situations involving a bad faith failure to pay amounts due and owing pursuant to construction contracts." HRS argues further that the Trial Court lacked a basis for ruling that HRS acted in bad faith. King responds by saying that Tenn. Code Ann § 66-34-602 is unambiguous and plainly provides for an award of attorney's fees if the nonprevailing party acted in bad faith. Regarding evidence of bad faith in this case, King's argument appears to be that HRS's failure to deposit retainage in an escrow account or pay the associated penalties was so inherently unreasonable that bad faith is self-evident.

Contrary to HRS's argument, Tenn. Code Ann. § 66-34-602 does not limit an award of attorney's fees under the PPA to instances of a "bad faith failure to pay amounts due and owing pursuant to construction contracts." The statute is unambiguous—"Reasonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith." Tenn. Code Ann. § 66-34-602(b) (West July 10, 2015 to June 30, 2020). There is no textual support for HRS's interpretation. Moreover, HRS's failure to deposit retainage in an escrow account, a violation of the PPA, implicated the parties' contractual rights and duties. The question is whether HRS acted with knowing or reckless disregard amounting to bad faith.

In its order, the Trial Court simply stated without elaboration that HRS's refusal to timely pay damages under the PPA was in bad faith. Respectfully, that is insufficient, as

---

[2] Tenn. Code Ann. § 66-34-602 was amended effective July 1, 2020 to provide: "Reasonable attorney's fees may be awarded against the nonprevailing party if the nonprevailing party acted in bad faith." Tenn. Code Ann. § 66-34-602(d) (West eff. July 1, 2020). As we have explained, the pre-July 2020 version of the PPA applies to this action. However, the amendment does not change the essential requirement for an award of attorney's fees under the PPA that the nonprevailing party acted in bad faith.

it only reiterates the underlying violation. If every violation of the PPA amounts to bad faith automatically, the language conditioning an award of attorney's fees on bad faith would be superfluous. The Trial Court's decision on attorney's fees was discretionary. Nevertheless, there is no evidentiary support for an award of attorney's fees in this case. Given the complete lack of evidence or factual findings underpinning the Trial Court's conclusory determination that HRS acted in bad faith, an award of attorney's fees to King under the PPA cannot be among the acceptable alternative dispositions. Therefore, we conclude that the Trial Court abused its discretion in granting King attorney's fees. We reverse the Trial Court's award of attorney's fees to King.

The final issue we address is whether the Trial Court erred in awarding King statutory interest. The relevant, pre-July 2020 version of the PPA provided concerning interest as follows: "Any payment not made in accordance with this chapter shall accrue interest, from the date due until the date paid, at the rate of interest for delinquent payments provided in written contract or, if no interest rate is specified in a written contract, at the rate specified in § 47-14-121." Tenn. Code Ann. § 66-34-601. HRS argues that "[t]he PPA addresses payments that concern or are involved with construction contracts" and that "King does not allege that HRS failed to make a payment due under a construction contract governed by the PPA." HRS argues further that awarding interest on the daily penalty would amount to an improper duplicative recovery by King. In response, King argues that "it is clear that the statute provides for accrual of interest any time a party fails or otherwise refuses to satisfy an obligation under the Prompt Pay Act by delivery of money."

We disagree with HRS's interpretation. Tenn. Code Ann. § 66-34-601 is unambiguous. Any payment not made in accordance with this chapter means any payment. We already have concluded that HRS violated the PPA by failing to deposit withheld retainage in an escrow account. Penalties came due each day the violation continued. Under the plain and ordinary meaning of Tenn. Code Ann. § 66-34-601, King is entitled to an award of statutory interest on payments "not made in accordance with this chapter . . . ."

The Trial Court, however, applied the amended version of Tenn. Code Ann. § 66-34-601 with its 1.5% interest rate to calculate the award of statutory interest to King. *See* Tenn. Code Ann. § 66-34-601 (West eff. July 1, 2020) ("Any payment not made in accordance with this chapter accrues interest, from the date due until the date paid, at the rate of interest for delinquent payments provided in written contract or, if no interest rate is specified in a written contract, then one and one-half percent (1.5%) per month."). As explained above and as the Trial Court itself recognized on the issue of assessing a penalty, the pre-July 2020 version of the PPA applies in this action. Therefore, the Trial Court erred in applying the amended version of the PPA to the issue of statutory interest. We vacate the Trial Court's award of statutory interest to King and remand for the Trial Court to

-11-

calculate an award of statutory interest to King applying the pre-July 2020 version of the PPA.

In sum, we affirm the Trial Court's assessment of the statutory penalty against HRS for its failure to deposit retainage in an escrow account. However, we reverse the Trial Court's award of attorney's fees to King because the Trial Court made no supporting findings nor is there any evidence of bad faith by HRS. In addition, we vacate the Trial Court's award of statutory interest to King and remand for the Trial Court to calculate a new award of statutory interest to King at the interest rate specified in the pre-July 2020 version of the PPA.

## Conclusion

The judgment of the Trial Court is affirmed, in part, reversed, in part, and vacated, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed one-half against the Appellant, Highlands Residential Services, and its surety, if any, and one-half against the Appellee, King Construction Group, Inc.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-12-